**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 8 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

---

KRISTIN FOOTE,
    Plaintiff-Appellee,

v.

ROGER SPIEGEL and ROBERT HOWE,
    Defendants-Appellants,

    and

JEFFREY L. GRAVIET and ERIC
McPHERSON,
    Defendants,

WEBER COUNTY SHERIFF'S
DEPARTMENT,
    Movant.

No. 95-4178

---

KRISTIN FOOTE,
    Plaintiff-Appellant,

v.

ROGER SPIEGEL, ROBERT HOWE,
JEFFREY L. GRAVIET and ERIC
McPHERSON,
    Defendants-Appellees,

WEBER COUNTY SHERIFF'S
DEPARTMENT,
    Movant.

No. 95-4179

Appeal from United States District Court
for the District of Utah
(D.C. No. 94-CV-754)

Dan R. Larsen, Assistant Attorney General, (Rebecca D. Waldron, Assistant Attorney General, and Jan Graham, Attorney General, with him on the brief), Salt Lake City, Utah, for the defendants-appellants.

W. Andrew McCullough, of McCullough, Jones & Ivins, Orem, Utah (Jensie L. Anderson, of American Civil Liberties Union of Utah Foundation, Inc., Salt Lake City, Utah, with him on the brief), for the plaintiff-appellee.

Before KELLY, HOLLOWAY, and BRISCOE, Circuit Judges.

BRISCOE, Circuit Judge.

Roger Spiegel and Robert Howe, Utah highway patrol officers, appeal the partial summary judgment denying them qualified immunity against Kristin Foote's claims under 42 U.S.C. § 1983 that she was illegally detained and subjected to a strip search. Foote cross-appeals the portions of the summary judgment order adverse to her. We dismiss Foote's cross-appeal and a portion of defendants' appeal for lack of jurisdiction, reverse in part the district court's denial of qualified immunity for the detention, affirm the denial of qualified immunity for the strip search, and remand for further proceedings.

I.

Foote was driving her vehicle north in the left lane of Utah Highway 89 (a four-lane undivided highway with a speed limit of 55 mph and no posted minimum speed) in the early afternoon of May 8, 1994. Her four-year-old daughter was in the back seat, and a friend, Jarvis Latteier, was in the front passenger seat. Latteier had very long blond hair, and tattoos were visible on his arms because he was wearing a tank top. Foote had just bought the vehicle and it had no license plates, but it did have a temporary paper registration permit on the left rear window.

Howe was driving his patrol car north in the right lane of Highway 89. As Foote's vehicle began to pass the patrol car, Howe noticed it had no front license plate. Howe slowed his patrol car and, as Foote's vehicle began to pass, he looked through the vehicle's rear window at the back of the temporary registration. Howe testified he could see the handwritten date on the registration which had bled through the paper and he thought it might have been altered. Foote's vehicle slowed and Howe's suspicions increased. Howe again slowed his patrol car and pulled it into the left lane behind Foote's vehicle and started the video camera mounted on the dashboard of the patrol car.

As the videotape started, Howe stated Foote slowed her vehicle to 40 mph, that she would not move out of the left lane, and that traffic was piling up behind her vehicle. The district court found the tape showed Foote was keeping up with traffic. The videotape indicates there is an intersection with traffic lights and a left turn lane, which could

-3-

provide a reason to slow down, but Foote did not turn left. Howe stated Foote increased the speed of her vehicle to 55 mph after she went past the intersection. Howe turned on the patrol car's overhead lights. Foote did not respond for several seconds, but she eventually activated her vehicle's right turn signal, crossed the centerline on her left, pulled to the right through a gap in the traffic, and stopped her vehicle on the right shoulder of the highway. Howe noticed Latteier was not wearing a seat belt.

Howe stopped his patrol car behind Foote's vehicle and approached Foote's vehicle on foot. He hesitated momentarily at the rear of Foote's vehicle before walking to the passenger side of Foote's vehicle to ask for Foote's driver's license and for Latteier's identification. He then walked to the back of the vehicle and looked at the temporary registration. He then walked to the driver's side of the vehicle and told Foote he had stopped her because he thought the registration might have been altered, but that upon closer inspection it was fine. Howe said, "Another thing, you were in the left hand lane and you start going 40 miles an hour, it starts causing problems you know what I mean, I mean traffic was piled up behind us." Appellant's append. III at 446. Foote responded, "My car doesn't go up hill very well." Id. Howe replied, "No, you weren't on a hill." Id. The tape confirms Foote's vehicle was not going uphill while traveling in the left lane.

Howe observed that Foote's eyes were bloodshot and that her voice and response were slow. Her response to Howe's initial comment is barely audible on the tape, but the remainder of the tape shows her speech was markedly slow. These factors, plus the

-4-

driving pattern and the absence of an odor of alcohol, led Howe to suspect Foote was under the influence of drugs, specifically marijuana. Howe asked Foote to get out of the vehicle and asked if she had problems with her eyes. She said she had lost her glasses. Howe administered the Horizontal Gaze Nystagmus test, which Foote passed, and the convergence test, which she failed. These test results are consistent with marijuana use. Howe had no formal training or authorization to use the tests, but the evidence is undisputed that he administered them correctly. Howe asked Foote to open her mouth and noted her tongue appeared to have a greenish tint, which is considered a further sign of marijuana use. According to Foote's expert, however, a brownish tint to the tongue is a sign of marijuana use and green debris in the mouth is another sign, but a greenish tint is not a sign of marijuana use.

Howe told Foote he believed she was under the influence of marijuana and he called Spiegel, a drug recognition expert. Spiegel arrived approximately fifteen minutes later and Howe told him Foote had been driving her vehicle too slowly in the left lane, and that she displayed slow speech and slow responses, and a slow and lethargic demeanor and driving pattern. Howe related to Spiegel the results of the eye convergence test, that there was an absence of alcohol odor, and that he suspected Foote had been driving while under the influence of marijuana. Spiegel, who had been trained to administer the eye tests, repeated the tests with the same results. He also observed the greenish tint on Foote's tongue. He administered standard field sobriety tests and

concluded Foote failed them. The tape shows Foote had obvious difficulty keeping her balance during the tests. However, Foote submitted an affidavit from a former police officer stating she had viewed the tape and in her opinion Foote had passed the field sobriety tests. Spiegel concluded Foote was under the influence of marijuana and arrested her. Officers searched her vehicle and Latteier, but they found no drugs.

Foote was taken to the Davis County Jail, where she was booked for driving while under the influence. She tested negative for alcohol on the breathalyzer. Her heart rate and blood pressure were normal, which is inconsistent with marijuana use although it does not rule it out. Her pupils were slightly dilated, which is consistent with marijuana use. A thorough pat-down search through Foote's light summer clothing (tee shirt and shorts) disclosed no drugs. A jail intake officer observed the greenish tint of Foote's tongue but thought it was from green candy. Foote had told the officers she had an ear infection, which can affect balance, and that she was taking a prescription inhalant for bronchitis, although she did not know what it was and did not have it with her. Although Foote was later diagnosed as having a neurological problem, possibly mild cerebral palsy, that causes her slow speech and balance problems, there is no evidence she told the officers that she had a condition that affected her speech and balance.

Spiegel suspected Foote was carrying drugs on her person and requested that a female jail intake officer conduct a strip search. From her observations, the jail officer believed Foote was under the influence of drugs. The jail officer testified she could have

refused to conduct the search and probably would not have conducted a strip search if Spiegel had not requested it. Although the Davis County Jail's policy of conducting strip searches of all persons arrested on drug charges had been held unconstitutional in Cottrell v. Kaysville City, 994 F.2d 730, 734 (10th Cir. 1993), decided almost a year before Foote's arrest, the jail officer testified all persons arrested on drug charges are subjected to strip searches. The strip search revealed no drugs, and a urine test ordered by Spiegel showed no indication of drugs. The record establishes that Foote was never placed in the general jail population and was released on bond shortly after her confinement. The charges against Foote were dropped after the negative drug test results were received.

## II.

Foote brought this § 1983 action against Howe, Spiegel, another officer who assisted in the search of her vehicle, and the officers' supervisor. She alleged the initial stop, the continued detention by the roadside, the arrest, the search of her vehicle, and the strip search all violated her constitutional rights. The search of Foote's vehicle, the actions of the officer who assisted in the search of the vehicle, and the actions of the supervisor are not at issue in this appeal.

Foote moved for summary judgment against Howe for the initial stop and the roadside detention. She contended the suspected registration violation was a pretext for searching a vehicle in which a long-haired man with tattoos was a passenger. She also argued any justification for the initial stop was completely dispelled when Howe saw the

-7-

temporary registration was not altered, at which time he no longer had a reason to detain her. Defendants argued there was no constitutional violation and that Howe was entitled to qualified immunity. The district court denied Foote's motion for summary judgment, ruling whether Howe could see the writing on the registration permit from his perspective and whether the suspected registration violation was a pretext for the stop were questions of fact precluding summary judgment.

Foote filed a second motion for summary judgment, arguing the strip search was unconstitutional. Defendants argued Spiegel had probable cause for the arrest and reasonable suspicion for the strip search, and that he was entitled to qualified immunity because he did not violate clearly established law. Defendants also moved for summary judgment, arguing the initial stop, the continued detention, the arrest, and the strip search were constitutional, and that defendants were entitled to qualified immunity because they did not violate clearly established law.

The district court ruled that Tenth Circuit law on pretextual stops was clearly established on the date of the incident, but that whether the initial stop had violated established law depended on questions of fact not resolved by the record, in particular whether the suspicious registration was visible from Howe's patrol car. The court also ruled Howe's continued detention of Foote violated clearly established law limiting the scope of detention for a traffic violation and entered summary judgment in favor of Foote on this issue. The court concluded Howe was required to use the least intrusive means

available to check his suspicion of an altered registration and that he failed to do so when he went first to the passenger side of Foote's vehicle and asked for Foote's driver's license and the passenger's identification, instead of immediately checking the registration permit. The court concluded that once Howe saw the registration had not been altered, he could not continue to detain Foote because there was little or no evidence of impaired driving and any indications of impairment were minimal, and, in any case, Howe failed to use the least intrusive means of checking his suspicions regarding the registration. The court concluded Spiegel had probable cause to arrest Foote and was therefore entitled to qualified immunity regarding the arrest. However, the court concluded the strip search violated clearly established law and entered summary judgment in favor of Foote on that issue. The court also granted summary judgment to defendants on Foote's claims against the two other officers and the claims based on the search of her vehicle. The court did not enter final judgment under Fed. R. Civ. P. 54(b).

Citing Mitchell v. Forsyth, 472 U.S. 511 (1985), Howe and Spiegel appeal the district court's ruling that they were not entitled to qualified immunity for the continued roadside detention and strip search. Foote cross-appeals the district court's denial of summary judgment on the legality of the initial stop and arrest. She asserts this court has pendent appellate jurisdiction to review and decide her cross-appeal. This court ordered the parties to brief the appealability of these rulings.

III.

**Jurisdiction**

*Defendants' Appeal of Denial of Qualified Immunity*

Orders denying qualified immunity before trial are appealable to the extent they resolve abstract issues of law. See Behrens v. Pelletier, 116 S. Ct. 834, 842 (1996); Johnson v. Jones, 115 S. Ct. 2151, 2156-57 (1995). A determination that the law allegedly violated by the defendant was clearly established at the time of the challenged actions is an abstract issue of law that is immediately appealable. A determination that under either party's version of the facts the defendant violated clearly established law is also immediately appealable. See Behrens, 116 S. Ct. at 842; Johnson, 115 S. Ct. at 2156-57; Mitchell, 472 U.S. at 528. However, government officials cannot appeal pretrial denial of qualified immunity to the extent the district court's order decides nothing more than whether the evidence could support a finding that particular conduct occurred. See Behrens, 116 S. Ct. at 842. An order denying qualified immunity on summary judgment is not appealable if it merely determines the facts asserted by the plaintiff are sufficiently supported by evidence in the record to survive summary judgment. See Johnson, 115 S. Ct. at 2156-57.

Defendants' notice of appeal identifies only the district court's denial of qualified immunity on the continued roadside detention and the strip search as the parts of the order

appealed. In their brief, they also argue the court erred in denying qualified immunity on the initial stop. We have no jurisdiction to review the denial of qualified immunity on the initial stop because it was not identified in the notice of appeal. See Cunico v. Pueblo School Dist. No. 60, 917 F.2d 431, 444 (10th Cir. 1990).

The order of the district court denying qualified immunity for the strip search is appealable. The court concluded even though Spiegel had a reasonable belief there was probable cause to arrest Foote for driving while under the influence, the undisputed facts known to Spiegel did not justify the strip search under clearly established law. Defendants contend on appeal that those facts justified the strip search.

The denial of qualified immunity for the continued roadside detention is also appealable in part. The district court first concluded that clearly established law required Howe to use the least restrictive means available to verify his suspicion regarding the registration permit, and that Howe failed to use the least restrictive means available when he approached the passenger side of the vehicle and requested Foote's driver's license and the passenger's identification before he checked the registration. Because the essential facts (that Howe checked the registration permit after approaching the passenger side of the vehicle and asking for identification) are undisputed, the denial of qualified immunity resolved an abstract issue of law. This portion of the order is appealable under Behrens and Johnson.

The district court also concluded the record established that Howe lacked reasonable suspicion to detain Foote for driving while under the influence. However, one of the crucial facts underlying this issue was disputed. Howe had three reasons for suspecting Foote was under the influence--her driving pattern, her bloodshot eyes, and her slow speech. Although it was undisputed that Foote's eyes were bloodshot and her speech pattern was markedly slow, the parties disputed whether the videotape showed any improper driving by Foote, other than a brief crossing of the center line while trying to pull her vehicle to the right after Howe signaled her to stop. Defendants assert the tape shows Foote failed to keep up with traffic while traveling in the left lane, but Foote asserts and the district court concluded that the tape showed she did keep up with traffic. Under Behrens and Johnson, defendants cannot challenge at this time the district court's determination that there was insufficient support in the record for the asserted fact that Foote's vehicle was traveling too slowly in the left lane. This portion of defendants' appeal from the denial of qualified immunity for the continued roadside detention is dismissed for lack of jurisdiction.

*Foote's Cross-Appeal*

Foote argues her cross-appeal should be permitted under the doctrine of pendent appellate jurisdiction on grounds of judicial economy and equity. However, Swint v. Chambers County Com'n, 514 U.S. 35, 115 S. Ct. 1203 (1995), restricts the circumstances

under which appellate courts can exercise pendent appellate jurisdiction, particularly pendent *party* appellate jurisdiction. Concerns for judicial economy do not justify permitting parties to parlay appealable collateral orders, such as denials of qualified immunity, into "multi-issue interlocutory appeal tickets." Id. at 1211. Pendent appellate jurisdiction can be proper only when the otherwise nonappealable decision is "inextricably intertwined" with the appealable decision, or where review of the nonappealable decision is necessary to ensure meaningful review of the appealable decision. Id. at 1212. A pendent appellate claim is inextricably intertwined with a properly appealable claim only if the pendent claim is coterminous with or subsumed in the properly appealable claim--that is, when resolution of the properly appealable claim necessarily resolves the pendent claim. Moore v. City of Wynnewood, 57 F.3d 924, 930 (10th Cir. 1995).

Here, resolution of the properly appealable issues--the appealable portion of the denial of qualified immunity for the continued roadside detention and the denial of qualified immunity for the strip search--will not necessarily resolve Foote's claims that the district court erred in denying summary judgment in her favor on the legality of the initial stop and arrest. A determination of whether Spiegel was entitled to qualified immunity for claims arising out of the strip search would not necessarily determine whether Spiegel had sufficient reason to arrest Foote or whether Howe had sufficient reason to stop her. The strip search and arrest issues overlap to some extent because the reasons for the arrest

may provide some support for a belief that Foote possessed drugs. However, Spiegel's qualified immunity for the strip search turns on whether Foote was placed in the general jail population and whether there was reasonable suspicion she was hiding drugs on her person, see Cottrell, 994 F.2d at 734, while the legality of the stop and arrest turn on whether there was reasonable suspicion of a registration violation and probable cause to believe Foote was driving while under the influence of drugs. Probable cause to believe a person was driving while under the influence of drugs does not establish reasonable suspicion that such person has drugs that can only be found by a strip search. Id.

Resolution of the appealable continued roadside detention issue would not necessarily determine the legality of the initial stop and arrest. A determination of whether Howe was entitled to qualified immunity for detaining Foote could not determine the legality of an initial stop for a suspected registration or traffic violation. Nor would determination of whether Howe was entitled to qualified immunity for detaining Foote determine Spiegel's liability for the arrest. Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation. Grimsley v. MacKay, 93 F.3d 676, 679 (10th Cir. 1996). Spiegel was not personally involved in Howe's decision to detain Foote. It was uncontroverted that when Spiegel arrived, Howe related to Spiegel that he had detained Foote because she drove erratically and had

-14-

bloodshot eyes and slow speech, and because of the results of the two eye tests.[1]  Officers

may rely on information furnished by other law enforcement officials to establish

reasonable suspicion and probable cause for an arrest.  Albright v. Rodriguez, 51 F.3d

1531, 1536 (10th Cir. 1995).  There is no evidence in the record that Spiegel had any

reason to doubt Howe's statements.  Consequently, even if we conclude Howe is not

entitled to qualified immunity for detaining Foote, Spiegel could rely on Howe's

statements in deciding to conduct field sobriety tests and arrest Foote.  See Romero v.

Fay, 45 F.3d 1472, 1476 (10th Cir. 1995) (officer may base probable cause on

information received from others absent showing information was untrustworthy).

Nor is resolution of Foote's nonappealable claims essential for effective review of

defendants' appealable claims.  It is true that Howe's immunity for the detention is

contingent on immunity for the initial stop and Spiegel's immunity for the strip search is

contingent on immunity for the arrest.  Howe could not be immune for the detention if the

initial stop was clearly unlawful and Spiegel could not be immune for the strip search if

the arrest was clearly unlawful.  However, the facts and issues are not so intertwined that

effective review of the detention apart from the stop, and the strip search apart from the

arrest is impossible.  We can address the appealable issues without reviewing the initial

---

[1]  Foote argued Spiegel's brief conversation with Howe was an insufficient interview under the standards for a drug recognition expert, but did not dispute that Howe told Spiegel what he had observed.

-15-

stop.  We therefore conclude the issues raised by Foote are not appealable and dismiss her cross-appeal for lack of jurisdiction.

### Qualified Immunity for Continued Roadside Detention

Defendants contend the district court erred in denying qualified immunity for the continued roadside detention for suspicion of driving while under the influence of drugs.  As discussed, although we lack jurisdiction to review the court's ruling that Howe lacked reasonable suspicion to detain Foote for driving while under the influence, we can review the court's ruling that Howe's initial approach to the passenger side of Foote's vehicle rendered the detention unlawful.  We agree with defendants that the district court erred in denying qualified immunity and in entering summary judgment in favor of Foote on this issue.

We review the district court's resolution of qualified immunity issues on summary judgment de novo.  See Moore, 57 F.3d at 931.  When a § 1983 defendant raises the defense of qualified immunity on summary judgment, the plaintiff must show the law was clearly established when the alleged violation occurred and must come forward with sufficient facts to show the official violated that clearly established law.  The defendant bears the normal summary judgment burden of showing no material facts that would defeat the qualified immunity defense remain in dispute.  For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the

clearly established weight of authority from other courts must be as plaintiff maintains.

V-1 Oil Co. v. Means, 94 F.3d 1420, 1423 (10th Cir. 1996).

> The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

Id. at 1423.

Here, the district court concluded Howe's continued detention of Foote violated clearly established law governing the scope of a detention for a traffic violation. The court found Howe was required to use the least intrusive means available to verify his suspicion that the registration permit was altered, and that he failed to do so when he first went to the passenger side of the vehicle and asked for a driver's license and identification instead of immediately checking the registration.

Howe was not required to use the least intrusive means available to verify his suspicions. See United States v. Sharpe, 470 U.S. 675, 686 (1985); V-1, 94 F.3d at 1427. Safety concerns justify means that are only minimally intrusive and that are not unreasonable in light of the purpose and circumstances of the stop. See id. at 1427-28. See also Florida v. Royer, 460 U.S. 491, 504 (1983) ("there are undoubtedly reasons of safety and security that would justify" more intrusive means of detaining a suspect).

Howe's approach to the passenger side of Foote's vehicle to request a driver's license and identification before checking the registration permit was not unreasonable. It

was only minimally more intrusive than the stop itself and was justified by Howe's concern for his own safety. Howe's affidavit and deposition testimony that he approached the passenger side of the vehicle before checking the registration permit for his own safety is undisputed by any evidence in the record. Howe was alone and knew nothing about the people in the vehicle. Safety concerns made it reasonable to first approach the passenger side of the vehicle away from traffic to quickly check the occupants' identities and determine if any weapons were in plain view.

We conclude the detention was not rendered clearly unlawful by Howe's failure to check the registration permit before approaching the passenger side of Foote's vehicle. However, because we lack jurisdiction to review the legality of the initial stop, we cannot resolve whether the initial stop rendered the resulting detention clearly unlawful. That depends on the outcome in district court.

**Qualified Immunity for Strip Search**

Spiegel was not entitled to qualified immunity for the strip search. It is not clearly unconstitutional to strip search persons arrested for possession of drugs but not placed in the general inmate population, at least if there is reasonable suspicion they have additional drugs or weapons on their persons. Warner v. Grand County, 57 F.3d 962, 964 (10th Cir. 1995). See Applewhite v. United States Air Force, 995 F.2d 997, 1000-01 (10th Cir. 1993), cert. denied 510 U.S. 1190 (1994). However, it was clearly established in May 1994 that a strip search of a person arrested for driving while under the influence

-18-

of drugs but not placed in the general jail population is not justified in the absence of reasonable suspicion that the arrestee has drugs or weapons hidden on his or her person. See Cottrell, 994 F.2d at 734. The mere fact that Foote was arrested for driving while under the influence of drugs does not justify the strip search. In Cottrell, this court expressly rejected the proposition that it is reasonable to strip search every inmate booked on a drug related charge, such as driving while under the influence of alcohol or drugs.

It is undisputed that Foote was not placed in the general inmate population. Nor does the record show there was any reason to suspect Foote had drugs hidden on her person. Even if there was probable cause to believe Foote was under the influence of marijuana, there was no particularized reason to believe she was hiding marijuana on her person. Cottrell rejected the proposition that it is reasonable to assume a person arrested for driving while under the influence of drugs has drugs concealed on his or her body simply because none were found in the vehicle or in a thorough pat-down search. 994 F.2d at 734. The record establishes a thorough pat-down search through Foote's light summer clothing did not reveal anything. Almost anything the strip search could have revealed would already have been discovered in the pat-down search. Moreover, Foote was under uninterrupted police supervision from the time Howe turned on his video camera on the highway. There is nothing in the record suggesting any kind of furtive movement consistent with hiding something beneath her clothing. There was no reasonable suspicion that Foote was hiding marijuana on her person. See Cottrell, 994

-19-

F.2d at 734-35.  Cf. Warner, 57 F.3d 962 (possession of marijuana and marijuana pipe provided reasonable suspicion for strip search); Applewhite, 995 F.2d 997 (possession of amphetamines and partially filled syringe during attempted drug purchase provided reasonable suspicion for strip search).

The record cannot support a conclusion that a reasonable officer could have believed there was reasonable suspicion that Foote was hiding drugs on her person.  The belief that Foote had drugs hidden in a body cavity because she was suspected of driving while under the influence of drugs, when no drugs had been found in her vehicle, on her passenger, or in a pat-down search, was unreasonable.  Foote was not suspected of trying to smuggle contraband into a prison or smuggle cocaine or heroin through customs; she was suspected of driving while under the influence of marijuana.  Cf. Bell v. Wolfish, 441 U.S. 520 (1979); Romo v. Champion, 46 F.3d 1013 (10th Cir.), cert. denied 116 S. Ct. 387 (1995).  It may be reasonable to believe a person driving while under the influence of marijuana could have marijuana in a pocket, a bag, or other container, or somewhere in the vehicle.  However, because Foote had no opportunity to hide anything beneath her clothing after Howe had stopped her vehicle and a thorough pat-down search at the jail had revealed no drugs, the strip search could be justified only if it were reasonable to believe persons driving while under the influence of marijuana, who have no particular reason to expect they will be searched, routinely carry a personal stash in a body cavity.  That belief is unreasonable.

## IV.

We dismiss for lack of jurisdiction Foote's cross-appeal and defendants' appeal of the district court's ruling that Howe lacked reasonable suspicion that Foote was driving while under the influence. We reverse the court's ruling that Howe's initial approach to Foote's vehicle rendered the detention unlawful (although a finding may be made upon remand that the initial stop was unlawful and therefore tainted the detention), affirm the denial of qualified immunity for the strip search, and remand for further proceedings.