Ikoma GEORGE, Plaintiff,

v.

The CITY OF WICHITA, Kansas, a municipal corporation; and Detective James J. Bratt, Defendants.

No. 02–1344–WEB.

United States District Court, D. Kansas.

Nov. 29, 2004.

Jon S. Womack, Wichita, KS, for Plaintiff.

Michael L. North, City of Wichita Law Department, Wichita, KS, for Defendants.

### Memorandum and Order

WESLEY E. BROWN, Senior District Judge.

On November 16, 2000, a Wichita Police Department (WPD) officer responded to a 911 call from an individual named Teresa Fermin. Fermin told the officer that her boyfriend Ikoma George had driven past her house and she was scared because of their violent history. Fermin said she had hurt her leg when she had been battered by George on November 4, 2000. Detective James Bratt of the WPD subsequently investigated the matter and drafted and signed an affidavit of probable cause. The Sedgwick County District Attorney's Office filed a complaint against plaintiff alleging Aggravated Battery, a felony, in Case No. 01 CR 196. George eventually pled guilty to three misdemeanor counts as part of a plea agreement with the State. George later filed this action under 42 U.S.C. § 1983, claiming the defendants violated his constitutional rights by, among other things, failing to fully investigate the incident; by including matters in an affidavit that the officer knew to be false; by having a municipal custom of not ensuring the accuracy of affidavits from officers; by failing to properly train and oversee officers; by causing a prosecution to be initiated in the absence of probable cause; by causing plaintiff's arrest without probable cause; and by causing plaintiff to be falsely imprisoned and strip-searched at the County detention facility.

The matter is now before the court on the defendants' motion for summary judgment. The court finds that oral argument would not assist in deciding the issues presented.

## I. *Facts.*

1. Plaintiff Ikoma George was never charged with rape or other sexual offenses under Kansas law arising from the incident with Teresa Fermin on November 4, 2000.

2. George was charged with Aggravated Battery under K.S.A. § 21–3414(a)(1)(A) from the incident.

3. At a Preliminary Hearing on March 9, 2001, Judge Gregory Waller of the Eighteenth Judicial District found that there was probable cause to believe plaintiff Ikoma George had committed the crime of Aggravated Battery against Teresa Fermin.

4. George entered a plea of No Contest or Nolo Contendere to one count of Domestic Battery, a Class B Misdemeanor, and two counts of Assault, a Class C Misdemeanor, on September 18, 2001.

5. On November 16, 2000, Teresa Fermin stated to Officer Nikkel of the Wichita Police Department that Ikoma George had battered her on November 4, 2000. She stated that George had thrown her on the floor in the front room of her house, causing her to hurt her leg.

6. Fermin was subsequently interviewed by WPD Detective James Bratt. Fermin told Bratt that she was frightened of George; that on November 4th George had picked her up and put her on the floor; that her left leg hurt as a result; that plaintiff slapped her a couple of times; and that she was in fear for her life.

7. Fermin told Bratt that she had non-consensual sex with George on November 4, 2000, after she injured her leg, and that he had raped her on prior occasions.

8. Plaintiff contends that Detective Bratt "made statements under oath which he knew to be false or which were wantonly and recklessly made for the purpose of convincing the Sedgwick County District Attorney to file criminal charges."

9. The statements made under oath, which plaintiff contends were false, were contained in Detective Bratt's probable cause affidavit and are as follows:

A comparison of the transcript of the interview with his affidavit reveals that James Bratt made the following false statements under oath:

a) "George told your affiant he was angry at Teresa. . ." ·

b) "George stated they looked [at] her leg, and he popped it back in place."

c) "George told your affiant that it was reasonable to believe a woman in Teresa's condition would not·want to have sexual intercourse."·

d) "George told your affiant that on 11–04–2000, he and his girlfriend, Teresa, got into an argument when she arrived at his· residence to retrieve her vacuum cleaner."

e) "Teresa stated George suddenly became angry and grabbed her by the neck . . ."

f) "Teresa said at this point, she was in fear for her life."

g) "Teresa stated George then took off her sweatpants and panties."

h) "Teresa said she said nothing to George while this was going on for fear he would harm her further."·

10. Bratt completed his probable cause affidavit in support of an application for an arrest warrant on January 22, 2001.

11. Prior to completing the affidavit, Bratt conducted taped interviews with Ikoma George and the alleged victim, Teresa Fermin.

12. Audiotapes used for interviews of suspects and victims are routinely copied over after a period of time and are not usually kept permanently by the Wichita Police Department. Additionally, the audiotapes of interviews are routinely given to the District Attorney's Office when the

case is referred there. No audiotape of either interview is currently in the possession of the defendants.

13. Detective Bratt is required by policies of the WPD to present all cases of suspected domestic violence to the Sedgwick County District Attorney's Office.

14. After a case is presented from the Wichita Police Department, it is up to the Sedgwick County District Attorney's Office to decide if charges are to be filed and what charges will be filed.

15. As part of his investigation, Detective Bratt: spoke to and read the notes of the civilian violence investigator, Gerri Lema; obtained copies of the police reports and material related to the Protection From Abuse Orders filed at earlier dates; obtained records from the K.U. Medical Center; conducted interviews with plaintiff and Ms. Fermin; spoke to Fermin several times over the phone before and after her taped interview, and eventually made out his affidavit and spoke to the Assistant District Attorney.

16. Teresa Fermin admitted to Detective Bratt that she lied to personnel in the emergency room at Via Christi Medical Center on November 5, 2000, about the cause of her injuries, telling them she had fallen down some stairs. She said the reason she lied was because she was intimidated by plaintiff George, whom she said was at the hospital "hovering" over her and would not let her be alone with medical personnel and "watched over me like a hawk."

17. In Bratt's experience, victims of domestic abuse will often lie to authorities about how they obtain their injuries because of embarrassment or out of concern for protecting their domestic partners.

18. The report from the K.U. Medical Center in an examination of Ms. Fermin on December 8, 2000, indicates that she suffered an injury to an intra patellar fat pad and a medial meniscus tear in her left knee which would require surgery. In the records she described the injury as occurring when she was assaulted by her boyfriend on November 4, 2000. The records indicate that she had immediate pain in the knee and could not stand. The knee had to be "popped back into place." The seriousness of the injury entered into Bratt's decision about whether the case warranted a felony charge against the plaintiff.

19. A warrant for plaintiff's arrest was filed on January 30, 2001, for the crime of Aggravated Battery, K.S.A. § 21–3414(a)(1)(A), a felony under Kansas law.

20. It is the policy of the Sedgwick County Detention Facility to strip search new prisoners who are charged with felonies during the booking process. The arresting officer is required to be present during the search but has no discretion whether the search takes place for a felony prisoner.

II. *Arguments on Summary Judgment.*

Defendants argue Detective Bratt is entitled to dismissal of the claims on grounds of qualified immunity. They contend plaintiff's arrest was supported by probable cause, and point to cases where the testimony of an alleged victim, standing alone, has been held sufficient to establish probable cause for an arrest. They argue that the Kansas court's finding of probable cause at plaintiff's preliminary hearing creates a presumption that plaintiff's rights were not violated. Defendants also maintain they had no duty to complete an investigation of the victim's claim prior to obtaining a warrant, and that any failure to do so did not violate plaintiff's constitutional rights. Defendants argue that any omissions or errors in the probable cause affidavit were not material, and that Bratt made no misrepresentations. As for plain-

tiff's claim that he was improperly strip-searched, defendants argue that Bratt did not conduct the search and therefore cannot be held liable. Defendants argue that the City of Wichita is entitled to summary judgment because Detective Bratt did not violate the plaintiff's rights, and therefore any alleged failure by the City to properly train Bratt could not have caused any violation of plaintiff's rights. Defendants also argue there is no evidence that any of the City's customs or training policies were constitutionally inadequate.

Plaintiff claims he was arrested twice on charges initiated by Detective Bratt, and he argues that the arrests violated his Fourth Amendment rights because they were made in the absence of probable cause. He maintains that the State court's finding of probable cause does not prevent him from asserting a lack of probable cause for the arrests. *Citing Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983). Plaintiff contends there are genuine issues of fact in dispute relating to the truth of statements contained in Bratt's affidavit, and he argues that questions about whether Bratt's actions were purposeful preclude a dismissal based on qualified immunity. Plaintiff contends the City improperly destroyed a tape recording of his interview by Detective Bratt and that this constituted a violation of his Fourteenth Amendment right to due process of law. Plaintiff further contends the defendants violated his Fourth Amendment rights by failing to prevent him from being strip-searched when he was booked into the Sedgwick County Detention Facility. He claims that a strip search such as this, which was conducted by non-medical personnel, without a warrant, and in the absence of probable cause for a search, violated his Fourth Amendment rights. Plaintiff claims that the City of Wichita is liable for the violation of his constitutional rights because it maintained a policy that allowed the destruction of

material evidence (i.e., tape recorded interviews of suspects), and because it knew that improper strip searches such as those done on plaintiff were being conducted but failed to take any action to prevent such searches.

### III. *Summary Judgment Standards.*

The standards and procedures for summary judgment are well established and will not be fully repeated here. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In essence, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* A disputed fact is "material" if it might affect the outcome of the suit under the governing law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Under Rule 56, the moving party initially bears the burden of making a prima facie showing of the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. *See Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998). This burden may be satisfied by pointing to an absence of evidence on an essential element of the non-movant's claim. *Id.* at 671 (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party carries this burden, the opposing party cannot simply rest upon the pleadings; it must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475

U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Because it is the role of a jury to resolve any conflicts in the evidence, the court must examine the evidence on a motion for summary judgment in the light most favorable to the non-moving party. *Jones v. Unisys Corp.,* 54 F.3d 624, 628 (10th Cir.1995).

## IV. *Discussion.*

■ To succeed on his claims under 42 U.S.C. § 1983, plaintiff must show that he was deprived of a constitutional right by a person acting under color of state law. *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir. 1991).

### A. *Claims against defendant James Bratt.*

■ Plaintiff claims that Detective Bratt knowingly made false statements and omissions in his affidavit, which caused plaintiff to be arrested without probable cause. Knowingly making false statements or omissions in an affidavit may violate an individual's rights under the Fourth Amendment. In addressing a similar claim in *Taylor v. Meacham,* 82 F.3d 1556 (10th Cir.1996), the Tenth Circuit noted:

"It is a violation of the Fourth Amendment for an arrest warrant affiant to 'knowingly, or with reckless disregard for the truth,' include false statements in the affidavit." [cite omitted] (*quoting Franks v. Delaware,* 438 U.S. 154, 155–

56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978)). Similarly, it is a Fourth Amendment violation to "knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause." *Id.* (*citing Stewart v. Donges,* 915 F.2d 572, 581–83 (10th Cir.1990)). If an arrest warrant affidavit contains false statements, "the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit." *Id.* Where information has been omitted from an affidavit, we determine the existence of probable cause " 'by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.' " *Id.* (*quoting Stewart,* 915 F.2d at 582 n. 13). *Id.* at 1562. Although an individual's Fourth Amendment rights may be violated in this manner by an arrest without probable cause, George's claim in the instant case fails for two reasons. First, plaintiff has failed to cite evidence from which a reasonable jury could find that Bratt knowingly or recklessly made materially false statements or omissions in his affidavit.[1] For example, plaintiff notes that Bratt's affidavit said plaintiff admitted being "angry" at Fermin at the time of the alleged assault, which plaintiff says was false because the transcript of Bratt's interview shows that plaintiff specifically said "no" when asked if he was angry.

---

1. Plaintiff says his case "in large part rests on the claims made about the interview with Detective Bratt. Since the audiotape has been destroyed or taped over, or in any event cannot be located, we think that as a general matter it only seems fair to look at both sides for an interpretation of what was said in the interview." Pl. Br. at 17. Aside from the fact that plaintiff's brief fails to identify any specific false statements or omissions that could have made a difference in the probable cause finding, plaintiff fails to establish the existence of any such factual dispute through affidavits or other materials contemplated by Rule 56. *See* Fed.R.Civ.P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial.").

The context of plaintiff's statement, however, shows that Bratt's statement was a fair characterization. George admitted to Bratt in the interview that Fermin was yelling at him and chastising him, and when Bratt asked if this made him angry, plaintiff responded, "Well I wasn't angry *but I was not, I didn't want her to keep talking to me like that,*" and "*[s]o I told her don't talk to me like that.*" After plaintiff did this, Fermin "*kept talking and walking towards me. So I picked her up . . .*" and then "I just put her down on the floor" and then "knelt down, holding her down there." George acknowledged in the interview that Fermin complained that he broke her leg when he did this. Taken in context, it was not a material misrepresentation to say that George acknowledged being angry. Moreover, it is uncontroverted that Bratt did not have a transcript of the interview at the time he made his affidavit, so the fact that there are minor discrepancies between the transcript and Bratt's statements in the affidavit does not demonstrate that Bratt knowingly made false statements. Plaintiff also claims Bratt falsely stated that George admitted popping Fermin's leg back in place after she was hurt and before he had sex with her, but the transcript shows this too was a fair recitation of George's statements. Likewise, Bratt also recited in his affidavit numerous statements made to him by the victim, Ms. Fermin, to which plaintiff now objects, but plaintiff cites no competent evidence that any such statements were false or misleading. Just as significant as this deficiency is the absence of any showing that Bratt's asserted falsities or omissions would undermine the probable cause otherwise shown in the affidavit. Plaintiff essentially ignores the fact that the victim of this offense told police that plaintiff assaulted and raped her. Fermin told the police that George was angry with her and threw her to the floor, causing the injury to her knee. She said George got on top

of her and slapped her, and that she was in fear for her life. She said George then took off her clothes and had sex with her, and that she said nothing as he did so for fear plaintiff would harm her. The medical evidence cited by Bratt indicated that Fermin sustained a serious physical knee injury requiring surgery in connection with the incident. And notwithstanding plaintiff's denial that he raped or assaulted Fermin, other statements he made during the interview tended to corroborate, as least to some degree, the claims made by Fermin. Plaintiff fails to address any of this information beyond arguing that if George's version of the incident is true, then the officer did not have probable cause for an arrest. Plaintiff essentially argues that if a finder of fact were to believe him, he would not be guilty of an offense. *See* Pl. Br. at 23 ("Mr. George was questioned on an allegation of sexual assault and aggravated battery in a case which should have given rise to a reasonable suspicion of doubt. . . ."). Regardless of whether or not the information in Bratt's affidavit would sustain a conviction for aggravated battery, however, the information was clearly sufficient to give rise to probable cause that plaintiff had committed such an offense. *Cf. Taylor*, 82 F.3d at 1562 ("Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime.")@. *See also* K.S.A. § 21–3414 (defining aggravated battery). Under the circumstances, the alleged false statements or information left out by Bratt would have made no difference to the finding of probable cause for an arrest. *Cf. Taylor*, 82 F.3d at 1562 (alleged inaccurate statements and omitted information would not have altered the probable cause determination). Moreover, plaintiff has failed to cite any evidence that Bratt violated his Fourth Amendment

rights by failing to further investigate the incident before seeking an arrest warrant. *See Romero v. Fay*, 45 F.3d 1472, 1477–78 (10th Cir.1995). *See also Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir.1988) ("A policeman ... is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause."). In sum, the uncontroverted facts in the record show that plaintiff was lawfully arrested based upon probable cause. Accordingly, defendant Bratt is entitled to summary judgment insofar as plaintiff claims Bratt violated his Fourth Amendment rights in connection with the affidavit of probable cause that led to plaintiff's arrest.[2]

■ Plaintiff's second claim is that defendant Bratt caused plaintiff to be subjected to an unlawful strip search at the Sedgwick County Detention Facility. As before, plaintiff's response fails to cite any evidentiary materials contemplated by Rule 56, which means he has failed to show the existence of a genuine issue for trial. Even overlooking this failure, and leaving

aside questions about whether defendant Bratt could be considered the proximate cause of the alleged strip search, plaintiff has failed to show that a strip search in these circumstances was a violation of his Fourth Amendment rights. In *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court found that a federal detention facility's policy of strip searching inmates (including a body cavity search) after every contact visit with a person from outside the institution was reasonable under the Fourth Amendment and, insofar as pre-trial detainees were concerned, the policy was legitimately related to institutional security and did not amount to "punishment" under the Due Process Clause. *Id.* at 558–59, 99 S.Ct. 1861. With regard to the reasonableness of such searches generally, the Court stated: "In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it was conducted." *Id.* at 559, 99 S.Ct. 1861. In this case,

---

2. Plaintiff appears to claim only that Bratt caused him to be wrongfully arrested without probable cause, as opposed to claiming that Bratt caused the continuation of a wrongful prosecution in the absence of probable case. *Cf. Pierce v. Gilchrist*, 359 F.3d 1279, 1295 (10th Cir.2004) (defendant may be liable either for initiating or continuing a criminal prosecution without probable cause). For that reason, the probable cause determination by the state court state at plaintiff's preliminary hearing does not affect plaintiff's claim, as the court's determination may have been based on evidence independent of what was contained in Bratt's affidavit and may have been developed subsequent to the arrest. The state court's determination of probable cause would be relevant—and indeed dispositive—of any claim by plaintiff that the prosecution was continued in the absence of probable cause, however, because no evidence has

been cited that Bratt somehow contaminated the preliminary hearing, such as by causing false or perjured testimony to be presented at the hearing. *See Taylor*, 82 F.3d at 1563–64. As such, the state court's finding of probable cause "broke the chain of causation," *see id.*, and precludes any claim that Bratt caused a violation of plaintiff's rights in connection with his continued incarceration or conviction subsequent to the hearing.

The court also notes that plaintiff also claims that he was twice subjected to being arrested and searched in connection with the incident involving Ms. Fermin. Plaintiff has cited no evidence, however, to show that Detective Bratt personally caused a second arrest and search to take place. *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir.1997) (Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.).

plaintiff was arrested for a violent felony and was booked into the jail. Plaintiff does not say whether he was placed in the jail's general population. No evidence has been cited that plaintiff was subjected to anything beyond a visual examination; nothing suggests plaintiff was intrusively touched by Detention officials as part of the search. There is no evidence that the search was conducted in an inappropriate room or place or was otherwise inappropriate in the manner in which it was conducted. The Detention Facility obviously has a legitimate interest in preventing inmates charged with violent felonies from bringing weapons or contraband into the population areas of the facility. Under the circumstances, even accepting plaintiff's allegations (in the absence of any actual evidence), his allegations fail to show that the strip search was a violation of his Fourth or Fourteenth Amendment rights. *Cf. Dufrin v. Spreen*, 712 F.2d 1084, 1089 (6th Cir.1983) (strip search of arrestee booked into jail on charge of felonious assault comported with due process).

 Additionally, Detective Bratt is entitled to summary judgment as to this claim on grounds of qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 592–93 (10th Cir.1994) *(quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *see also Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir.1992) ("If [defendants'] actions are those that a reasonable person could have believed were lawful, defendants are entitled to dismissal before discovery."). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law, the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted). Plaintiff has cited no authority to show it was clearly established law that a police officer in Detective Bratt's position had a constitutional duty to prevent jail officials from conducting a strip search of an arrestee such as plaintiff. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304 (10th Cir.2002) (When a § 1983 defendant raises the defense of qualified immunity on summary judgment, plaintiff has the burden of showing that the official violated a constitutional or statutory right; and that the constitutional or statutory right was clearly established when the alleged violation occurred. If the plaintiff fails to establish either prong, the court must grant the defendant qualified immunity).

 Plaintiff's third claim against Detective Bratt asserts that Bratt destroyed material exculpatory evidence relating to plaintiff's criminal case. This claim refers to an audio recording of Bratt's interview of George in the course of the officer's criminal investigation. The audiotape was transcribed and turned over the Sedgwick County District Attorney's office, but at some point thereafter the tape was apparently discarded or taped over. It is no longer in the defendants' possession. Plaintiff contends there was exculpatory evidence on the tape, and he argues its destruction gives rise to an inference of bad faith on the part of the defendants. However, no evidence has been cited to

show that the transcript of George's interview differs materially from the audiotape or that it contained undisclosed exculpatory evidence. Nor is there any evidence that Bratt caused the destruction or loss of the tape or that its destruction or loss was undertaken in bad faith. No inference of bad faith would arise from the destruction of the tape pursuant to routine policy after the conclusion of a criminal case, particularly in view of the fact that plaintiff apparently never sought the tape while it was in the defendants' possession. *Cf. Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law"). Moreover, plaintiff could only maintain a § 1983 claim for violation of due process in these circumstances by showing that the defendants' destruction of the tape resulted in a fundamentally unfair criminal conviction, but he has made no such showing. *See Morgan v. Gertz,* 166 F.3d 1307, 1310 (10th Cir.1999) (the withholding or destruction of evidence violates a criminal defendant's constitutional rights only if, as a result of the withholding or destruction of evidence, the criminal defendant is denied a fair trial). *See also Jean v. Collins,* 221 F.3d 656, 663 (4th Cir.2000) (A *Brady* violation that resulted in the overturning of the § 1983 plaintiff's conviction is a necessary, but not a sufficient, condition for § 1983 liability on the part of the police.). Beyond mere conclusory allegations in the Pretrial Order that plaintiff pled guilty "to take advantage of the plea bargain and not because he was guilty," Doc. 25 at 6, he has cited no evidence to raise a genuine issue as to the validity of his criminal conviction. Accordingly, defendant Bratt is entitled to dismissal of this claim as a matter of law.

**B. Claims against Defendant City of Wichita.**

 Plaintiff also claims the City of Wichita is responsible for the alleged violations of his constitutional rights. In order to hold a municipality liable under § 1983, a plaintiff must establish (1) that a municipal employee committed a constitutional violation, and (2) that the municipality's policies are the "moving force behind the constitutional violation." *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff has failed to establish either of these elements. The City's alleged custom of not ensuring the accuracy of officer affidavits (see Complaint, ¶ 7) cannot form the basis of a § 1983 claim because there has been no showing that Detective Bratt submitted a materially false affidavit or otherwise caused an arrest of plaintiff without probable cause. Nor has plaintiff shown evidence of any other violations of his rights by Detective Bratt. *See Trigalet v. City of Tulsa, Okla.,* 239 F.3d 1150, 1155–56 (10th Cir.2001) (Absent a constitutional violation by a city officer, the city cannot be held liable under § 1983). Moreover, plaintiff has failed to cite any evidence to establish the existence of a municipal custom or policy that led to a violation of his rights, including a custom of not ensuring the accuracy of affidavits. *See Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1216 (10th Cir. 2003) (Isolated or unprecedented incidents are insufficient to create municipal liability under § 1983). In sum, plaintiff has failed to cite any evidence showing a genuine issue of fact on his claim of municipal liability under § 1983. Accordingly, the City is entitled to summary judgment on his claims.

## V. *Conclusion.*

The defendants' Motion for Summary Judgment (Doc. 31) is GRANTED.

IT IS ORDERED that the plaintiff Ikoma George take nothing on his claims and the action is dismissed on the merits. The clerk is directed to enter judgment accordingly. IT IS SO ORDERED this 29th Day of November, 2004, at Wichita, Ks.