# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3530

_____

Jonathan Jacobson,

*Plaintiff - Appellant,*

v.

James McCormick; Polyxene Voltaire,

*Defendants - Appellees.*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 13, 2014
Filed: August 14, 2014

_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

This case requires us to consider what was clearly established law in September 2009 concerning searches of arrestees at a county detention center. The plaintiff-appellant in this case, Jonathan Jacobson, was arrested for driving under the influence of alcohol. He admitted to the arresting officer that he recently had "smoked a bowl" of marijuana. After he was transported to a county detention center, two officers

conducted a visual inspection body-cavity search of Jacobson before he entered the facility's booking area.

Jacobson was booked for the drunk driving charge and released. He later sued the two officers involved in the search pursuant to 42 U.S.C. § 1983, alleging that the officers violated his rights under the Fourth Amendment. The district court[1] concluded that the search did not violate the Fourth Amendment and granted summary judgment for the officers. Jacobson appeals, and we affirm because the officers are entitled to qualified immunity.

I.

On September 12, 2009, Olmsted County Deputy Sheriff James McCormick arrested Jacobson for driving while impaired at around 3:00 a.m. in Stewartsville, Minnesota. McCormick could smell alcohol on Jacobson's breath, and Jacobson admitted that he recently "smoked a bowl" of marijuana. McCormick conducted a patdown search of Jacobson, but found no weapons or other contraband. McCormick then handcuffed Jacobson and placed him in the back of a squad car. McCormick searched Jacobson's vehicle, but found no drugs.

McCormick transported Jacobson to the Olmsted County Adult Detention Center for booking. Deputy Polyxene Voltaire met them in the detention center's garage. McCormick informed Voltaire that Jacobson had admitted to smoking marijuana before the traffic stop.

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

McCormick removed Jacobson from the squad car. McCormick searched the back seat of the car, but found no weapons or other contraband. Voltaire then searched Jacobson while he was clothed and found no contraband.

McCormick and Voltaire placed Jacobson in a private cell and performed a visual inspection body-cavity search of Jacobson. The practice is also described in the record as a "strip search," and is described by the county's policy as follows:

> STRIP SEARCH: A systematic search done in front of a Deputy of the same sex on a detainee. The detainee will remove one piece of clothing at a time and hand it to the Deputy to be checked for contraband. After all clothing is removed the Deputy will have the detainee turn and face them, lift genitalia, breasts and body rolls. . . . Detainee[s] will then turn so that they are facing away from the Deputy, spread their buttock cheeks and squat three times.

According to the officers, county policy does not call for a strip search of all persons entering the facility. Rather, a detention officer must have a reasonable basis to conclude the arrestee may be concealing contraband. Voltaire determined that a strip search of Jacobson was warranted under county policy. He concluded that because Jacobson admitted that he recently smoked a bowl of marijuana, "[i]t was possible Mr. Jacobson had more illegal drugs on his person," and Voltaire "was concerned about drugs coming into the facility."

After the strip search, Jacobson was placed in the detention center's booking area. The booking area is populated by arrestees who will eventually be detained in the general population and others who will be released immediately. According to the detention center's director, "[t]he sheer volume of bookings (5500 annually) and other detainee traffic does not allow for effective separation of detainees that will eventually be housed from those that will be released." Jacobson was booked and released.

Jacobson sued McCormick and Voltaire for damages under 42 U.S.C. § 1983, alleging that the strip search violated his Fourth Amendment right to be free from unreasonable searches. McCormick and Voltaire filed an answer, in which they asserted immunity defenses under federal and state law. McCormick and Voltaire then moved for summary judgment on the ground that the strip search was constitutional. They did not raise qualified immunity in their summary judgment papers.

The district court granted summary judgment for McCormick and Voltaire. The court reasoned that "a strip search conducted with a reasonable suspicion that a particular detainee might be concealing contraband is constitutional," and the officers "had a reasonable suspicion that Jacobson might have contraband." Jacobson appeals, arguing that the district court erred on the Fourth Amendment issue.

After oral argument, we directed the parties to file supplemental briefs addressing two questions: (1) Should this court address whether McCormick and Voltaire are entitled to qualified immunity? (2) If so, is there sufficient evidence to show that McCormick and Voltaire violated a clearly established right of Jacobson in September 2009? In his supplemental briefing, Jacobson conceded that we "must address" the issue of qualified immunity, but argued the officers are not entitled to immunity because it was clearly established that strip searches were permissible only if justified by reasonable suspicion, and the officers had no such reasonable suspicion in this case. The officers argue that they are entitled to qualified immunity.

II.

We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to Jacobson, the non-moving party. The district court considered only whether the officers violated Jacobson's constitutional rights, but we may affirm on any ground supported by the record. *Moyle v. Anderson*, 571

-4-

F.3d 814, 817 (8th Cir. 2009). Because the defendants did not waive their qualified immunity defense, *see Hill v. McKinley*, 311 F.3d 899, 902 (8th Cir. 2002), and Jacobson agrees we should address the defense, we believe it appropriate to address the issue of qualified immunity on appeal. *See Graves v. City of Coeur d'Alene*, 339 F.3d 828, 845 n.23 (9th Cir. 2003), *abrogated on other grounds by Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt Cnty.*, 542 U.S. 177 (2004); *cf. Wright v. Newman*, 735 F.2d 1073, 1076-77 (8th Cir. 1984).

McCormick and Voltaire are entitled to qualified immunity from suit unless the facts taken in the light most favorable to Jacobson establish that the officers violated a constitutional right, and that the right was clearly established at the time of the incident. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). McCormick and Voltaire argue that the search was reasonable on either of two rationales. Although county policy calls for a strip search only when officers have reasonable suspicion that a detainee possesses contraband, the officers contend that in light of *Florence v. Board of Chosen Freeholders*, 132 S. Ct. 1510 (2012), the Constitution would allow them to strip search—without individualized suspicion—*all* detainees who enter the booking area, so the search of Jacobson was permissible on that basis. Alternatively, the officers assert that they had reasonable suspicion to believe that Jacobson possessed contraband. Without deciding potentially difficult questions about whether the search was reasonable on either basis, *see Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009), we conclude that the strip search of Jacobson did not violate clearly established law in 2009.

In September 2009, a reasonable officer had a solid basis to believe that strip searching an arrestee was constitutional if there was reasonable suspicion that the detainee possessed contraband. *See McDonell v. Hunter*, 809 F.2d 1302, 1306-07 (8th Cir. 1987); *Jones v. Edwards*, 770 F.2d 739, 741 (8th Cir. 1985). The county's policy provided for strip searches based on reasonable suspicion. Jacobson was arrested for driving while impaired. He admitted that he recently smoked a bowl of marijuana, so

there was also probable cause to believe that he recently had committed a controlled substance offense. Officers found no drugs in a traditional pat-down search of Jacobson's person while he was clothed. The question confronting the officers under county policy, therefore, was whether they had reasonable suspicion that Jacobson may have concealed contraband in a private area that could be viewed only through a strip search.

Two circuits had held by 2009 that an arrest based on evidence that a person was under the influence of drugs did not provide reasonable suspicion for a strip search. In *Way v. County of Ventura*, 445 F.3d 1157 (9th Cir. 2006), the Ninth Circuit concluded that officers did not have reasonable suspicion to strip search a person arrested while working as a bartender and charged with being under the influence of cocaine or methamphetamine. *Id*. at 1162. At the same time, however, the court ruled that the officers were entitled to qualified immunity, because the Ninth Circuit as of 2000 "had never previously addressed the constitutionality of a body cavity search policy premised on the nature of [a] drug offense," and had "pointed to charges involving drugs, contraband and violence as the kind of offense that might give rise to reasonable suspicion." *Id*. at 1163. The Tenth Circuit in *Foote v. Spiegel*, 118 F.3d 1416 (10th Cir. 1997), denied qualified immunity to an officer who strip-searched a detainee who was arrested for driving under the influence of drugs but not placed in the general jail population. *Id*. at 1425. In addressing whether the law was clearly established, however, the court reasoned that *Cottrell v. Kaysville City*, 994 F.2d 730, 734-35 (10th Cir. 1993), had established in the same jurisdiction that it was unreasonable for correctional officers to strip search every arrestee booked for driving while under the influence of drugs. *Foote*, 118 F.3d at 1425-26.

In 2009, this court had never addressed the constitutionality of a strip search premised on an arrestee's recent use of drugs, and a close reading of our precedent left open the possibility that drug-related offenses or conduct might give rise to reasonable suspicion. In *Jones*, we emphasized that the arrestee's dog-leash law violation was

"hardly the sort of crime to inspire officers with the fear of introducing weapons or contraband into the holding cell." 770 F.2d at 741. The cases cited in *Jones* to support the unreasonableness of the strip search for a leash-law violator suggested that drug crimes by their nature might give rise to reasonable suspicion. *See, e.g.*, *Hill v. Bogans*, 735 F.2d 391, 394 (10th Cir. 1984) (observing that an outstanding speeding ticket and violation of a restriction on a driver's license "are not offenses associated with the concealment of weapons or contraband in a body cavity"); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1273 (7th Cir. 1983) (noting that prostitution, assault, and narcotics violations "are the kinds of crimes, unlike traffic or other minor offenses, that might give rise to a reasonable belief that the . . . arrestee was concealing an item in a body cavity"); *Logan v. Shealy*, 660 F.2d 1007, 1013 (4th Cir. 1981) (observing that the detainee's offense of driving while intoxicated, "though not a minor traffic offense, was nevertheless one not commonly associated by its very nature with the possession of weapons or contraband"); *see also Giles v. Ackerman*, 746 F.2d 614, 617 (9th Cir. 1984) ("Reasonable suspicion may be based on such factors as the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record."), *overruled by Bull v. City & Cnty. of S.F.*, 595 F.3d 964 (9th Cir. 2010) (en banc).

To overcome qualified immunity, a plaintiff typically must identify either "cases of controlling authority in their jurisdiction at the time of the incident" or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). Neither criterion is satisfied here. As of 2009, there was no controlling authority in the Eighth Circuit clearly establishing that what the officers did in Jacobson's case was unconstitutional. The Tenth Circuit in *Foote* denied qualified immunity in a similar case only after the same court previously had established that suspicion of recent drug use did not justify a strip search. The Ninth Circuit *granted* qualified immunity to officers who strip-searched based on recent drug use—despite clearly established law in the Tenth Circuit—because the officers in the Ninth Circuit

were not on clear notice that recent drug use was insufficient to constitute reasonable suspicion. In our view, two decisions from other circuits did not place the issue beyond debate, and a reasonable correctional officer in Minnesota could have believed—like the district court in this very case—that Jacobson's admission that he recently smoked a bowl of marijuana gave reasonable suspicion to believe that he could be secreting contraband in private areas of his body. McCormick and Voltaire are thus entitled to qualified immunity.

*       *       *

The judgment of the district court is affirmed.

_____