[No. G005611. Fourth Dist., Div. Three. Feb. 28, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD TYLER WADE, Defendant and Appellant.

COUNSEL

David D. Carico, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and Robert M. Foster, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**CROSBY, J.**—Donald Wade pleaded guilty to possession of heroin and being under the influence of a controlled substance after his motion to suppress evidence was denied. Although a body cavity search of his person did not strictly conform to California law as expressed in Penal Code section 4030, that statute contains no exclusionary remedy.[1] We find no basis for suppression under federal law and affirm accordingly.

I

On April 7, 1987, at approximately 8:30 p.m., Santa Ana Police Officers Wiist and Schweitzer observed a vehicle with expired registration stickers. Wiist activated the police car's red spotlight while Schweitzer focused a white spotlight on the car's interior. The officers followed the car for approximately one-half mile and noticed the passenger rise in his seat several times, touching the headliner; and his right shoulder dipped, as though he were trying to adjust something below his waist.

Once the car stopped, Schweitzer asked Wade, the passenger, routine questions and then ordered him out of the car and conducted a patdown search. No contraband or weapons were found. Wiist also spoke with Wade

---

[1] Penal Code section 4030 is important to the discussion following but is a lengthy statute. It is reproduced in full in appendix A attached.

and noticed his movements were slow and deliberate. He also observed scratch marks on Wade's face and that he had a dry mouth, droopy eyelids, and constricted pupils. Based on 10 years of experience and training as a narcotics evaluator, Wiist determined Wade was under the influence of an opiate and arrested him. The automobile was searched, but no contraband was found.

At the police station, Wade was escorted to an interview room. After receiving oral permission from the supervising lieutenant to conduct a visual body cavity search, Schweitzer told Wade to pull down his trousers and underwear and to bend over and spread his buttocks. Wiist saw a small plastic object protruding from Wade's anus and believed the object was a bindle of tar heroin. The officers summoned Investigator Chaney to assist them. Wearing rubber gloves, Chaney spread Wade's buttocks; and the bindle fell to the floor without any further physical invasion into the rectal cavity. Laboratory analysis confirmed Wiist's suspicion as to the nature of the substance in the bindle.

## II

Wade launches a three-pronged attack on the two visual body cavity searches.[2] He claims the heroin should have been suppressed because the searches were not supported by probable cause, the officers failed to first obtain a warrant, and the searches were conducted in an unreasonable manner.

■ We reject all three contentions. There was probable cause to conduct the first search. Wade's appearance and suspicious behavior in the car gave the officers good reason to believe narcotics were hidden on his person. And the observation of the object in Wade's anus obviously eliminated any question concerning probable cause to conduct the second rectal examination.

■ Despite Wade's protestations, the law does not require a warrant before a visual cavity search may be conducted. (Pen. Code, § 4030, subd. (h).) As "[t]he human body is not, of course, a sanctuary in which evidence may be concealed with impunity[,] . . . [a]ppropriate procedures to retrieve such evidence are neither 'unreasonable' per se under the Fourth

---

[2] These facts present a close question as to whether the second search was actually a *physical* body cavity search, as that term is defined in Penal Code section 4030, subdivision (d)(3). But, despite a bland reference in footnote 7 of his opening brief concerning the statutory need for a search warrant to conduct a physical body cavity search, Wade appears to concede both searches were only visual. The distinction will not be meaningful in light of our resolution of his appeal.

Amendment, nor violations of 'due process' procedures guaranteed by the Fifth and Fourteenth Amendments. [Citations.]" (*People* v. *Scott* (1978) 21 Cal.3d 284, 293 [145 Cal.Rptr. 876, 578 P.2d 123].) Moreover, "[w]hen a person is lawfully arrested . . . post-arrest searches of the body to discover . . . controlled substances are generally permissible. [Citation.]" (*Salinas* v. *Breier* (1982) 695 F.2d 1073, 1083.) The rationale for this rule is several-fold: Retrieval of concealed contraband preserves evidence, prevents the import of illegal substances into a penal facility, and also guards against accidental overdosing by the individual ingesting or secreting the drugs. Given the circumstances of this arrest, a warrantless visual cavity search was legal under California law as codified in Penal Code section 4030. Federal law is in accord. (See, e.g., *United States* v. *Cameron* (1976) 538 F.2d 254, 259 ["We do not hold that a warrant must be obtained prior to all body cavity searches."].)

■ Other provisions of Penal Code section 4030 were not met, however. (See, e.g., Pen. Code, § 4030, subds. (f) [written authorization from the "supervising officer on duty" is a prerequisite for a visual body cavity search], (j) [the "breast, buttocks, or genitalia of the person being searched" may not be touched in a visual body cavity search]). Nevertheless, Wade is not entitled to suppression of the contraband.

Penal Code section 4030 was expressly enacted "to protect the state and federal constitutional rights of the people of California by establishing a statewide policy strictly limiting strip and body cavity searches." (Pen. Code, § 4030, subd. (a).) It is a misdemeanor to "knowingly and willfully authorize[] or conduct[] a body cavity search in violation of this section" (Pen. Code, § 4030, subd. (n)), and a person harmed by any such violation is accorded specific statutory civil remedies. (Pen. Code, § 4030, subd. (p).) But nowhere has the Legislature provided for suppression of evidence obtained without section 4030 compliance, although it certainly knows how to create an exclusionary rule when it so intends. (See, e.g., Pen. Code, § 631, subd. (c).) And in this post-Proposition 8 era, absent such a pronouncement by the Legislature, state courts are powerless to suppress evidence unless federal law so requires. (*People* v. *West* (1985) 170 Cal.App.3d 326, 330-331 [216 Cal.Rptr. 195].)

Use of the federal exclusionary rule has been discussed in scores of cases involving physical searches. For example, in *Rochin* v. *California* (1952) 342 U.S. 165 [96 L.Ed. 183, 72 S.Ct. 205, 25 A.L.R.2d 1396], the Supreme Court emphasized the importance of a case-by-case balancing test to determine whether an invasion into a suspect's body "shocks the conscience" (*id.,* at p. 172 [96 L.Ed. at p. 190]) or involves "methods too close to the rack and the screw to" be tolerated. (*Ibid.* [96 L.Ed. at p. 190].) There,

officers forcibly entered the defendant's bedroom, jumped on him in an unsuccessful effort to force expectoration of morphine capsules he swallowed, and finally retrieved the contraband by having his stomach pumped at a hospital. The court determined this episode offended "even hardened sensibilities" and suppressed the evidence. (*Ibid.* [96 L.Ed. at p. 190].) In *Winston* v. *Lee* (1985) 470 U.S. 753 [84 L.Ed.2d 662, 105 S.Ct. 1611], the court concluded a proposed surgery under general anesthesia to remove a bullet from the defendant's chest without his consent would not be tolerated. The decision set forth various factors which should be considered, including "the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity" and "the community's interest in fairly and accurately determining guilt or innocence." (*Id.,* at pp. 761-762 [84 L.Ed.2d at pp. 669-670].)

This case pales by comparison with *Rochin* and *Winston*: The body search was brief, nonviolent, minimally intrusive, and not conducted in a grossly offensive manner. Such searches are routine for inmates of penal facilities across the country. When the relatively mild intrusion is balanced against the public's strong interest in combating narcotics use and the fact the contraband was visible and retrieved without actual physical invasion of a body cavity, it is clear that federal law would not require suppression of the evidence. To the extent Penal Code section 4030 represents this state's interpretation of the Fourth Amendment, there may have been a violation of the United States Constitution under the Legislature's view of that amendment. But the Legislature did not enact an exclusionary remedy, and none exists under state law after Proposition 8 if suppression would not be required under federal law.

Judgment affirmed.

Scoville, P. J., concurred.

**SONENSHINE, J.**—I concur. In the particular facts before us, exclusion is not mandated by the United States Supreme Court. (*Winston* v. *Lee* (1985) 470 U.S. 753 [84 L.Ed.2d 662, 105 S.Ct. 1611]; *Rochin* v. *California*

(1952) 342 U.S. 165 [96 L.Ed. 183, 72 S.Ct. 205, 25 A.L.R.2d 1396].) And, of course, we are bound by those decisions. (See *People* v. *Neer* (1986) 177 Cal.App.3d 991, 999-1001 [223 Cal.Rptr. 555].)

APPENDIX A

See next page.

## Appendix A

§ 4030. Strip and body cavity searches; limitation; application; definitions; conditions; damages

(a) The Legislature finds and declares that law enforcement policies and practices for conducting strip or body cavity searches of detained persons vary widely throughout California. Consequently, some people have been arbitrarily subjected to unnecessary strip and body cavity searches after arrests for minor misdemeanor and infraction offenses. Some present search practices violate state and federal constitutional rights to privacy and freedom from unreasonable searches and seizures.

It is the intent of the Legislature in enacting this section to protect the state and federal constitutional rights of the people of California by establishing a statewide policy strictly limiting strip and body cavity searches.

(b) The provisions of this section shall apply only to prearraignment detainees arrested for infraction or misdemeanor offenses and to any minor detained prior to a detention hearing on the grounds that he or she is a person described in Section 300, 601, or 602 of the Welfare and Institutions Code alleged to have committed a misdemeanor or infraction offense. The provisions of this section shall not apply to any person in the custody of the Director of the Department of Corrections or the Director of the Youth Authority.

(c) As used in this section, "strip search" means a search which requires a person to remove or arrange some or all of his or her clothing so as to permit a visual inspection of the underclothing, breasts, buttocks, or genitalia of such person.

(d) As used in this section:

(1) "Body cavity" only means the stomach or rectal cavity of a person, and vagina of a female person.

(2) "Visual body cavity search" means visual inspection of a body cavity.

(3) "Physical body cavity search" means physical intrusion into a body cavity for the purpose of discovering any object concealed in the body cavity.

(e) Notwithstanding any other provision of law, including Section 40304.5 of the Vehicle Code, when a person is arrested and taken into custody, that person may be subjected to patdown searches, metal detector searches, and thorough clothing searches in order to discover and retrieve concealed weapons and contraband substances prior to being placed in a booking cell.

(f) No person arrested and held in custody on a misdemeanor or infraction offense, except those involving weapons, controlled substances or violence nor any minor detained prior to a detention hearing on the grounds that he or she is a person described in Section 300, 601 or 602 of the Welfare and Institutions Code, except for those minors alleged to have committed felonies or offenses involving weapons, controlled substances or violence, shall be subjected to a strip search or visual body cavity search prior to placement in the general jail population, unless a peace officer has determined there is reasonable suspicion based on specific and articulable facts to believe such person is concealing a weapon or contraband, and a strip search will result in the discovery of the weapon or contraband. No strip search or visual body cavity search or both may be conducted without the prior written authorization of the supervising officer on duty. The authorization shall include the specific and articulable facts and circumstances upon which the reasonable suspicion determination was made by the supervisor.

(g)(1) Except pursuant to the provisions of paragraph (2), no person arrested and held in custody on a misdemeanor or infraction offense not involving weapons, controlled substances or violence, shall be confined in the general jail population unless all of the following are true:

(i) The person is not cited and released.

(ii) The person is not released on his or her own recognizance pursuant to Article 9 (commencing with Section 1318) of Chapter 1 of Title 10 of Part 2.

(iii) The person is not able to post bail within a reasonable time not less than three hours.

(2) No person may be housed in the general jail population prior to release pursuant to the provisions of paragraph (1) unless a documented emergency exists and there is no reasonable alternative to such placement. Such person shall be placed in the general population only upon prior written authorization documenting the specific facts and circumstances of the emergency. The written authorization shall be signed by the uniformed supervisor of the facility or by a uniformed watch commander. Any person confined in the general jail population pursuant to paragraph (1) shall retain all rights to release on citation, his or her own recognizance, or bail which were preempted as a consequence of the emergency.

(h) No person arrested on a misdemeanor or infraction offense, nor any minor described in subdivision (b), shall be subjected to a physical body cavity search except under the authority of a search warrant issued by a magistrate specifically authorizing the physical body cavity search.

(i) A copy of the prior written authorization required by subdivisions (f) and (g) and the search warrant required by subdivision (h) shall be placed in the agency's records and made available, on request, to the person searched or his or her authorized representative. With regard to any strip, visual or body search, the time, date and place of the search, the name and sex of the person conducting the search and a statement of the results of the search, including a list of any items removed from the person searched, shall be recorded in the agency's records and made available, upon request, to the person searched or his or her authorized representative.

(j) Persons conducting a strip search or a visual body cavity search shall not touch the breasts, buttocks, or genitalia of the person being searched.

(k) A physical body cavity search shall be conducted under sanitary conditions, and only by a physician, nurse practitioner, registered nurse, licensed vocational nurse or emergency medical technician Level II licensed to practice in this state. Any physician engaged in providing health care to detainees and inmates of the facility may conduct physical body cavity searches.

(l) All persons conducting or otherwise present during a strip search or visual or physical body cavity search shall be of the same sex as the person being searched, except for physicians or licensed medical personnel.

(m) All strip, visual and physical body cavity searches shall be conducted in an area of privacy so that the search cannot be observed by persons not participating in the search. Persons are considered to be participating in the search if their official duties relative to search procedure require them to be present at the time the search is conducted.

(n) A person who knowingly and willfully authorizes or conducts a strip, visual or physical body cavity search in violation of this section is guilty of a misdemeanor.

(o) Nothing in this section shall be construed as limiting any common law or statutory rights of any person regarding any action for damages or injunctive relief, or as precluding the prosecution under another provision of law of any peace officer or other person who has violated this section.

(p) Any person who suffers damage or harm as a result of a violation of this section may bring a civil action to recover actual damages, or one thousand dollars ($1,000), whichever is greater. In addition, the court may, in its discretion, award punitive damages, equitable relief as it deems necessary and proper, and costs, including reasonable attorney's fees.