# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NOELLE WAY,
            *Plaintiff-Appellee,*

v.

COUNTY OF VENTURA; ROBERT
BROOKS; KAREN HANSON,
            *Defendants-Appellants,*

            and

ROBERT ORTIEZ, Ventura Police
Officer,
            *Defendant.*

No. 04-55457

D.C. No.
CV-01-05401-CBM

OPINION

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, Chief Judge, Presiding

Argued and Submitted
December 8, 2005—Pasadena, California

Filed April 20, 2006

Before: Pamela Ann Rymer and Kim McLane Wardlaw,
Circuit Judges, and Edward C. Reed, Jr.,* District Judge.

Opinion by Judge Rymer;
Concurrence by Judge Wardlaw

---

*The Honorable Edward C. Reed, Jr., Senior United States District
Judge for the District of Nevada, sitting by designation.

4475

**COUNSEL**

Alan E. Wisotsky and Jeffrey Held, Law Offices of Alan E. Wisotsky, Oxnard, California, for the defendants-appellants.

Earnest C.S. Bell, Law Offices of Earnest C.S. Bell, Ventura, California, for the plaintiff-appellee.

**OPINION**

RYMER, Circuit Judge:

We must decide whether Ventura County Sheriff Bob Brooks and Deputy Karen Hanson are entitled to qualified immunity for conducting a strip search with a visual cavity inspection of Noelle Way during the booking process at a pretrial detention facility on a misdemeanor charge of being under the influence of cocaine or methamphetamine in violation of California Health & Safety Code § 11550(a). This requires us first to decide whether a strip search with a visual cavity inspection can be justified based on Ventura County's blanket strip-search policy allowing such a search for arrestees charged with any controlled substance offense before placement in the general jail population. The district court held that the search was unconstitutional, and we agree. However, it was not clearly established at the time of Way's booking that strip searching persons arrested on drug charges

is unreasonable. As the district court thought otherwise on this issue, we reverse.

I

On September 6, 2000, Ventura Police Officer Ortiz encountered Way at her work place, the Red Cove Bar, where she was a bartender. He observed that she had dilated pupils, a rapid pulse rate, a nervous attitude and rapid speech. Based on these observations, he suspected that she was under the influence of cocaine or methamphetamine, a misdemeanor violation of California Health & Safety Code § 11550(a), and arrested her at 2:10 A.M. A blood sample taken from Way at a hospital the night of the arrest revealed that the officer's suspicion was incorrect.

Meanwhile, Ortiz took Way to Ventura County's pretrial detention facility for booking. The booking policy of the Ventura County Sheriff's Department provided for a visual body cavity search of all persons arrested on fresh misdemeanor drug charges. The search must be performed by a deputy of the same sex as the detainee, and it involves no touching. The person arrested was to be searched immediately upon booking, without a waiting period for posting bail.

Pursuant to the policy, Hanson sought and obtained her supervisor's approval to perform a body cavity search upon Way. The sole justification was that Way had been arrested for violating California Health & Safety Code § 11550(a). According to Hanson, "the nature of the charges is viewed as providing the reasonable suspicion required under the law to perform a visual strip search."

The search involved a visual inspection of Way's unclothed body cavities, and it took place in a private room with only Hanson present. Hanson directed Way to remove all her clothing. She then directed Way to remove her tampon and to tear it and discard it in a wastebasket. Pursuant to the search pol-

icy, Way was required to "bend forward, spread the buttocks, and cough to allow for a visual inspection of the anal area" as well as to "spread her labia at the same time to allow a check of the vaginal area." The search yielded no contraband, weapons or drugs.

The booking process lasted 26 minutes, from 3:10 A.M. to 3:36 A.M. Within 20 minutes after the completion of the body cavity search, Way learned the amount of her bail. She was placed in a holding cell with five or six other women, where she was allowed to make phone calls. She remained there for several hours. She then posted bail, and was released without entering the jail's general population.

Way brought this civil rights action under 42 U.S.C. § 1983 against Brooks and Hanson, as well as the County of Ventura, alleging that they violated her civil rights under the Fourth and Fourteenth Amendments by subjecting her to a body cavity search following her arrest. The parties both filed motions for summary judgment. The district court held that the search violated Way's constitutional rights because individualized suspicion is required for arrestees who are not admitted to the general jail population. It denied qualified immunity to Brooks and Hanson on the basis of *Giles v. Ackerman*, 746 F.2d 614, 616-17 (9th Cir. 1984) (per curiam), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999) (en banc); *Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 711 (9th Cir. 1990) (as amended), *implied overruling on other grounds recognized by Act Up!/Portland v. Bagley*, 971 F.2d 298, 301 (9th Cir. 1992); and *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1446 (9th Cir. 1991), holding that a reasonable officer reviewing Ventura's policy and the established law would have recognized that the Sheriff Department's policy was unconstitutional because it did not further any legitimate penological interests.[1] That ruling is the subject of this appeal.

---

[1]Brooks and Hanson previously filed an appeal from the district court's order denying qualified immunity, which we dismissed as premature because the court had not also determined whether Way's constitutional rights were violated. *Way v. County of Ventura*, 348 F.3d 808 (9th Cir. 2003).

II

We analyze qualified immunity using the two-step inquiry set forth in *Saucier v. Katz*, 533 U.S. 194 (2001). The first step of the *Saucier* analysis requires us to decide whether this body cavity search violated Way's constitutional rights. *Id.* at 201. If so, "the next, sequential step is to ask whether the right was clearly established." *Id.* For a right to be clearly established, its contours " 'must be sufficiently clear that a reasonable official would understand that what he is doing violates the right.' " *Id.* at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The protection afforded by qualified immunity "safeguards 'all but the plainly incompetent or those who knowingly violate the law.' " *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 977 (9th Cir. 1998) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

A

Brooks and Hanson argue that the visual body cavity search violated no constitutional rights because Sheriff's Department officials are entitled to deference on jail security matters, and their interest in securing this jail during the booking process outweighs Way's right to be free from a compulsory visual inspection of her genitalia and anus. They also contend that the Sheriff Department's strip search policy complies with state law as set out in California Penal Code § 4030.[2] Way

---

[2]California Penal Code § 4030(a) provides:

> The Legislature finds and declares that law enforcement policies and practices for conducting strip or body cavity searches of detained persons vary widely throughout California. Consequently, some people have been arbitrarily subjected to unnecessary strip and body cavity searches after arrests for minor misdemeanor and infraction offenses. Some present search practices violate state and federal constitutional rights to privacy and freedom from unreasonable searches and seizures.

responds that drug charges alone are insufficient to justify such an extreme intrusion, where she was merely a misdemeanor arrestee charged with being under the influence of a controlled substance, who was detained for only a few hours and was never housed with the jail's general population.

**[1]** We assess the constitutionality of a search by balancing "the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). This requires us to weigh "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*

**[2]** The scope of the intrusion here is indisputably a "frightening and humiliating" invasion, even when conducted "with all due courtesy." *Giles*, 746 F.2d at 617. Its intrusiveness "cannot be overstated." *Kennedy*, 901 F.2d at 711; *see also Kirkpatrick v. City of Los Angeles*, 803 F.2d 485, 489-90 (9th Cir. 1986) ("[T]he fact that a strip search is conducted reasonably, without touching and outside the view of all persons other than the party performing the search, does not negate

---

It is the intent of the Legislature in enacting this section to protect the state and federal constitutional rights of the people of California by establishing a statewide policy strictly limiting strip and body cavity searches.

Subsection (f) provides that "[n]o person arrested and held in custody on a misdemeanor . . . offense, except those involving weapons, controlled substances or violence . . . shall be subjected to a strip search or visual body cavity search prior to placement in the general jail population" without "reasonable suspicion based on specific and articulable facts to believe such person is concealing a weapon or contraband, and a strip search will result in the discovery of the weapon or contraband." To conduct such a search requires authorization of the supervising officer on duty, which "shall include the specific and articulable facts and circumstances upon which the reasonable suspicion determination was made by the supervisor." Cal. Penal Code § 4030(f).

the fact that a strip search is a significant intrusion on the person searched . . . ." (citation omitted)); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1446 (9th Cir. 1989) ("The feelings of humiliation and degradation associated with forcibly exposing one's nude body to strangers for visual inspection is beyond dispute.").

The parties agree that the search took place in a private room, behind closed doors, with no one present but Way and Hanson, and there is no issue about how it was conducted.

This leaves the question whether the intrusion was justified. We recognize the difficulty of operating a detention facility safely, the seriousness of the risk of smuggled weapons and contraband, and the deference we owe jail officials' exercise of judgment in adopting and executing policies necessary to maintain institutional security. *Wolfish*, 441 U.S. at 546-47, 559. However, this does not mean that a blanket policy is constitutionally acceptable simply by virtue of jail officials' invocation of security concerns. *Giles*, 746 F.2d at 616. Rather, the policy must be " 'reasonably related' to the [detention facility's] interest in maintaining security." *Kennedy*, 901 F.2d at 713 (citing *Wolfish*, 441 U.S. at 540).

[3] Brooks and Hanson failed to show any link between their blanket strip search policy and legitimate security concerns for detainees such as Way. *See Giles*, 746 F.2d at 617 (imposing burden on officials to demonstrate that security interests warrant the serious invasion of privacy inflicted by a strip search policy). They made only a conclusory submission that the purpose of the search protocol is "to provide facility security and to ensure the inmate's health and safety," and that inmates have "sometimes" ingested drugs to evade detection. Nor did they adduce evidence of any deterrent effect on persons such as Way who are spontaneously arrested and detained temporarily at the facility for being under the influence.[3] *Cf. Wolfish*, 441 U.S. at 559 (noting evidence in the

---

[3]Counsel suggested at oral argument that the facility had experienced difficulties since the district court's ruling in this case, but the record contains no evidence of whatever they might be.

record documenting detainees' attempts to secrete money, drugs, weapons and other contraband in body cavities). In effect, they ask us to take security implications on faith. This we cannot do. *See Kennedy*, 901 F.2d at 713 (declining to accept the Los Angeles Police Department's justification for a blanket strip search policy as it rested only on assumptions and societal judgments without documentation of risk).

Brooks and Hanson maintain that all drug offenses inherently heighten security concerns because of the risk that persons arrested on drug charges will bring drugs with them. Perhaps with respect to other types of drug offenses — about which we express no opinion — but the record shows us nothing about this jail (or any other jail's) experience with those arrested on § 11550(a) charges. We do not disagree that in some cases, the charge itself may give rise to reasonable suspicion; indeed, we so held in *Thompson*, where the felony charged was grand theft auto and the offense was "sufficiently associated with violence to justify a visual strip search." 885 F.2d at 1447. We have also been careful to distinguish charges that involve drugs and contraband as well as violence when invalidating blanket strip search policies applied in other contexts. *See Kennedy*, 901 F.2d at 716 (holding unconstitutional a strip search policy applied to person arrested for stealing a roommate's belongings, observing that "[n]o weapons, no drugs, no contraband, no violent acts of any kind were involved"); *Giles*, 746 F.2d at 618 (declaring unconstitutional a policy requiring that all persons booked on minor traffic offenses be strip searched, while noting that the "offense was minor and was related neither to drugs nor to weapons"). However, we have never said that *all* offenses of any particular nature support reasonable suspicion. To the contrary, the charge in *Kennedy* was for grand theft as it was in *Thompson*, but we held that a strip search policy was unconstitutional as applied to Kennedy because the grand theft charge there arose out of an ordinary disagreement that did not in itself pose a threat of violence in jail.

**[4]** We cannot see how the charge of being under the influence of a drug necessarily poses a threat of concealing (and thereby using or trafficking) additional drugs in jail during the limited time between booking and bail, or booking and placement in the general population. If not, it was unreasonable to assume that Way harbored drugs in some cavity or other.[4] "Reasonable suspicion may be based on such factors as the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record." *Giles*, 746 F.2d at 617. Way was under the control of the arresting officer from the time she was taken into custody at work until booking. The officer perceived no indication that she was carrying drugs or contraband. *Compare, e.g., People v. Wade*, 208 Cal. App. 3d 305, 306-07, 256 Cal. Rptr. 189, 190-91 (Cal. Ct. App. 1989) (holding that a body cavity search was justified by the arresting officers' observation of the suspect apparently trying to put something beneath his waistband). Hanson conducted a pat down search before obtaining permission for the visual cavity search, and it turned up nothing.[5] Way was held with several other detainees, but was not in the facility for long and was never put into the general jail population. *See Fuller*, 950 F.2d at 1448 ("In determining the constitutionality of strip searches of arrestees, courts have distinguished between searches of detainees who were simply awaiting bail, and searches conducted on inmates admitted or about to be admitted to the general jail population."); *Ward v. County of San Diego*, 791 F.2d 1329, 1333 (9th Cir. 1986) ("In most

---

[4]We have no occasion to comment on any other kind of drug offense, which may have different characteristics that might lead to a different analysis on a different record. *See, e.g., United States v. Gonzalez-Rincon*, 36 F.3d 859, 861, 864 (9th Cir. 1994) (discussing narcotics smuggler who carried 73 balloons of cocaine in her rectum and alimentary canal).

[5]At argument, counsel suggested that LSD, for example, can be smuggled on postage stamps or the like that are not readily discoverable during a pat down search. However, there is no evidence to this effect in the record and it is not self-evident that cocaine or methamphetamine (which is what Way was suspected of being under the influence of) are routinely concealed in this way.

instances the unreasonableness of a strip search conducted prior to an [own recognizance] release determination is plain."). In these circumstances, we conclude that an arrest for being under the influence of a drug does not supply reasonable suspicion that drugs are concealed in a bodily cavity.

**[5]** As there is no evidence that security concerns require strip searching all arrestees on all drug offenses before placement in the general jail population, and none that all persons arrested for being under the influence of a drug are likely to have concealed more drugs in a bodily cavity, the Sheriff Department's blanket policy cannot be a proxy for reasonable suspicion. There was no individualized suspicion that Way concealed drugs in a bodily cavity. Therefore, subjecting her to a strip search with visual cavity inspection offended her constitutional right to be free of an unreasonable search.

B

**[6]** Having determined that Way's constitutional rights were violated, the remaining question is whether it was clearly established at the time of the search that the search was unconstitutional. *See Saucier*, 533 U.S. at 201. "If the law did not put [Brooks and Hanson] on notice that [their] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202.

**[7]** We had held prior to Way's search that performing a strip search with visual cavity inspection before determining whether the person was eligible for release on his own recognizance could not be justified based on a blanket policy of subjecting all minor offense arrestees to a strip search, *Ward*, 791 F.2d 1329; that a visual body cavity search of a person arrested on an offense that did not involve violence could not be justified by a blanket policy of subjecting all those arrested for felonies to such a search, *Kennedy*, 901 F.2d 702; and that a strip and body cavity search of all felony arrestees could not be justified based on the jail's blanket search policy regard-

less of the crime with which they were charged, *Fuller*, 950 F.2d 1437. However, we had never previously addressed the constitutionality of a body cavity search policy premised on the nature of this or any other drug offense. More importantly, we had held that the nature of the offense alone may provide reasonable suspicion, *Thompson*, 885 F.2d at 1447, and twice pointed to charges involving drugs, contraband and violence as the kind of offense that might give rise to reasonable suspicion. *Kennedy*, 901 F.2d at 716; *Giles*, 746 F.2d at 618. In these circumstances, we cannot conclude that a reasonable officer would necessarily have realized that relying on a Department policy that excepted arrestees being held on controlled substance offenses from the general prohibition on strip searches, and subjecting Way to a strip search with visual cavity inspection pursuant to it, was unconstitutional.

The district court came to a different conclusion by analogy to the Tenth Circuit's decision in *Foote v. Spiegel*, 118 F.3d 1416 (10th Cir. 1997). There, a highway patrol officer arrested Foote for being under the influence of marijuana. *Id.* at 1420. She was strip searched when booked at the county jail and was released without being placed in the general jail population. *Id.* at 1421. The court held that the search was unconstitutional, and that the officers were not entitled to qualified immunity. However, *Foote*'s qualified immunity analysis turned on the fact that before the Foote search was conducted, *Cottrell v. Kaysville City*, 994 F.2d 730, 734-35 (10th Cir. 1993), clearly established that merely being arrested for driving under the influence of drugs does not justify a strip search. *Foote*, 118 F.3d at 1421. Our law was not so clear (until now), hence our reluctance to hold Brooks and Hanson personally liable for damages.

**[8]** We therefore conclude that subjecting Way to a strip search with visual cavity inspection during the booking process on a misdemeanor charge of being under the influence of a drug was not justified by the jail's blanket policy of strip searching all those arrested on charges involving a controlled

substance. Undocumented security needs of the jail facility do not outweigh the invasion of Way's personal rights. Nor is such an intrusive search warranted solely on account of the nature of the charge in this case, as being under the influence of a drug does not necessarily indicate that the person has concealed more drugs in a body cavity. This said, a reasonable official in the position of Brooks and Hanson would not have understood that following the jail's policy violated Way's rights because the unconstitutionality of the search they conducted was not clearly established at the time.

AFFIRMED IN PART; REVERSED IN PART.

WARDLAW, Circuit Judge, concurring:

I concur with all but part B of the well-written majority opinion. I depart from the majority because I believe that at the time of Way's body cavity search, the Fourth Amendment principles governing blanket searches prohibited strip and body cavity blanket searches and required individualized reasonable suspicion based on specific and articulable facts before such a search could be conducted on a misdemeanor arrestee. I particularly disagree with the majority's parsimonious approach to the analysis of our precedent, which focuses on the application of clearly established Fourth Amendment principles to each penal code section we have addressed and not on the well-established principles themselves. The fact of the matter is that Ventura County had an unconstitutional blanket strip search policy which permitted such searches based upon no specific, articulable facts at all—a policy we have repeatedly held unconstitutional. I cannot go so far as to say that under the circumstances the individual officers acted objectively unreasonably, however, only because reasonable officers in Brooks' and Hanson's position could have believed that the Ventura County Sheriff's Department policy com-

ported with the Constitution. Therefore I concur in holding that the officers are entitled to qualified immunity.

# I

I disagree that we can find clearly established law in this case only if we have previously addressed the constitutionality of a strip and body cavity search of a misdemeanor drug arrestee. To the contrary, a constitutional right may be clearly established when "[t]he reasoning, though not the holding" of a prior decision applies to a set of facts, *Hope v. Pelzer*, 536 U.S. 730, 743 (2002), and "officials can still be on notice that their conduct violates established law even in novel factual circumstances," *id.* at 741. "Otherwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct." *Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 2001). The Supreme Court has rejected this parsimonious approach to the Fourth Amendment principle of reasonableness, stating that the balancing test fashioned in *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), is "not capable of precise definition or mechanical application."

The clearly established general Fourth Amendment principle of reasonableness, which we have applied to strip and body cavity searches of arrestees, *see Thompson v. City of Los Angeles*, 885 F.2d 1439, 1445 (9th Cir. 1989), rendered the Ventura County blanket strip and body cavity search policy unconstitutional. We have interpreted the principle of reasonableness in the context of misdemeanor pretrial detainees to require application of a standard of individualized reasonable suspicion, such that "arrestees . . . may be subjected to a strip search only if jail officials have a reasonable suspicion that the *particular* arrestee is carrying or concealing contraband or suffering from a communicable disease." *Giles v. Ackerman*, 746 F.2d 614, 615 (9th Cir. 1984) (per curiam) (emphasis added), *overruled in part on other grounds by Hodgers-*

*Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999) (en banc). Only consideration of the multiplicity of factors giving rise to individualized reasonable suspicion, such as "the nature of the offense, the arrestee's appearance and conduct, *and* the prior arrest record," properly balances the "intrusion on the individual's Fourth Amendment interests against [the] promotion of legitimate governmental interests." *Id.* at 617 (emphasis added). Moreover, "[i]n most instances the unreasonableness of a strip search conducted prior to an [own recognizance] release determination is plain." *Ward v. County of San Diego*, 791 F.2d 1329, 1333 (9th Cir. 1986). We have routinely struck down blanket strip search policies as applied against misdemeanor arrestees, and we have gone so far as to state that "no published state or federal case since *Schmerber v. California*, 384 U.S. 757 (1966) . . . upholds the constitutionality of a blanket policy of strip searches of minor offense arrestees." *Ward*, 791 F.2d at 1332.

While the majority broadly asserts that we held in *Thompson*, 885 F.2d at 1447, that the nature of the charge alone, when it involves drugs, contraband, or violence, warrants a departure from the standard of individualized reasonable suspicion, I read our holding in *Thompson* much more narrowly. First, we explicitly limited *Thompson* to the facts of the case, stating that "our decision is extremely narrow and only applies to theft of an automobile." *Id.* at 1447 n.6. Second, the *Thompson* case does not control Way's case because Thompson was strip searched not at the time of booking, but rather when he entered the general county jail population, where he remained for five days. *Id.* at 1442. While this additional factor alone will not justify a strip search, *id.*, "[i]n determining the constitutionality of strip searches of arrestees, courts have distinguished between searches of detainees who were simply awaiting bail, and searches conducted on inmates admitted or about to be admitted to the general jail population," *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1448 (9th Cir. 1991). The majority bolsters its argument by pointing out that in *Giles*, 746 F.2d at 618, and *Kennedy v. Los Angeles Police Dep't*,

901 F.2d 702, 716 (9th Cir. 1990), *implied overruling in part on other grounds recognized by Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993), we pointed to charges involving drugs, contraband, and violence as the kind of offenses that might give rise to reasonable suspicion. However, our holdings in those cases considered the nature of the charge only in combination with other specific and individualized factors.

Departure from the standard of individualized reasonable suspicion in deference to the security concerns of prison officials, *see Bell*, 441 U.S. at 559, is appropriate only when there is "sufficient justification for [the] blanket search policy," *Kennedy*, 901 F.2d at 713. We struck down a blanket policy similar to the Ventura County Sheriff's Department's in *Giles*, 746 F.2d at 617 (citing *Bell*, 551 U.S. at 559), because no security concerns comparable to those in *Bell* had been demonstrated. Demonstration of legitimate security concerns is required because the Court in *Bell* "did not . . . read out of the Constitution the provision of general application that a search be justified as reasonable under the circumstances." *Weber v. Dell*, 804 F.2d 796, 800 (2nd Cir. 1986). As the majority concludes, there is no documentation of security concerns in this case which are serious enough to justify a departure from the general rule requiring individualized reasonable suspicion. The facts of this case amply demonstrate the perils of such a blanket search policy, because all of the circumstances surrounding Way's arrest and detention negate the conclusion that Way, a detainee who had no chance to secrete drugs, was to post bail shortly after her arrest, and who would never be mingled with the general jail population, was concealing contraband. At the time the search was performed, it was clearly established that absent a showing of serious security concerns tipping the balance in favor of the government interest, the Fourth Amendment required application of the standard of individualized reasonable suspicion.

## II

While it is generally the case that "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct," *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982), in measuring the "objective reasonableness" of the officer's conduct we have looked beyond the existing body of case law to whether the officer relied on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question, *see Wilson v. Layne*, 526 U.S. 603, 617 (1999); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). While reliance upon a statute does not render the officer's conduct per se reasonable, *Roska v. Peterson*, 328 F.3d 1230, 1252 (10th Cir. 2003), "the existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional," because "police officers on the street are ordinarily entitled to rely on the assumption that the [legislature] ha[s] considered the views of legal counsel and concluded that the ordinance is a valid and constitutional exercise of authority," *Grossman*, 33 F.3d at 1209.

In this case, the Ventura County Sheriff's Department policy authorized the conduct in question. Officers Brooks and Hanson complied with that policy. In addition, California Penal Code § 4030(f) specifically exempts those arrested on misdemeanor "weapons, controlled substances or violence" charges from the general prohibition on strip and body cavity searches of persons arrested for misdemeanors. Because the policy and the state statute had not fallen into desuetude, *Grossman*, 33 F.3d at 1209 n.19, nor were they "patently violative of fundamental constitutional principles," *id.* at 1209, it was objectively reasonable for officers Brooks and Hanson to rely on the policy and the state statute in performing the strip search on Way. I therefore concur with the majority in finding that the officers are entitled to qualified immunity.